FORTUNATO P. BENAVIDES, Circuit Judge: *
Monica Hague appeals the district court’s grant of summary judgment in favor of her former employer, the University of Texas Health Science Center at San Antonio (“UTHSC”), on her sexual harassment, discrimination, and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (“Title VII”). We AFFIRM the district court’s judgment with respect to Hague’s claims of sex discrimination and sexual harassment and VACATE and REMAND *330 Hague’s claim of retaliation for further proceedings.
I.
Hague, a registered nurse, worked for UTHSC as a Civilian Training Officer in the Emergency Health Services Department from December 15, 2008, through August 81, 2011. She was hired on a term basis and her contract was renewed twice, each time for an additional one-year period.
During this time, Hague filed two complaints with hospital administration. First, Hague complained of sexual harassment by her colleague Dr. Manifold to the interim Associate Dean Dr. Wallace in September of 2010. She alleged that Dr. Manifold, the Department Medical Director, sexually harassed her by reading an explicit magazine article out loud during a department meeting. Hague also alleged that Dr. Manifold gave a co-worker a sexually explicit doll. In October, Hague followed with an official complaint to Dr. Blankmeyer, the person responsible for civil rights compliance issues pertaining to faculty members.[1] After the internal investigation, Dr. Blankmeyer’s supervisor, Dr. Murphy, sent separate memoranda to Hague and Dr. Manifold in December, explaining the result of the investigation and admonishing Dr. Manifold’s prior behavior.[2]
Second, Hague filed a grievance with Dr. Wallace concerning Dr. Villers, the head of the Emergency Health Services Department.[3] Hague’s grievance alleged that Dr. Villers treated employees differently and fostered an uninviting work environment.[4] An internal investigation cleared Dr. Villers of Hague’s allegations, but Dr. Murphy nonetheless recommended that Dr. Villers make certain improvements in communications within the department.
Hague filed a formal Equal Employment Opportunity Commission (“EEOC”) complaint on June 17, 2011. On June 20, 2011, UTHSC provided Hague a letter advising that her contract would not be renewed and her employment with UTHSC would not continue beyond August 31, 2011. UTHSC did not receive notice of Hague’s formal EEOC complaint until June 21, 2011.
Hague received a right-to-sue letter and subsequently filed this suit alleging violations of Title VII. She alleges that UTHSC unlawfully retaliated against her, that she was wrongfully discriminated against on account of her gender, and that she was sexually harassed in the workplace. The district court granted summary judgment in favor of UTHSC. Hague appeals, arguing that she raised genuine issues of material fact on all claims.
*331 ii.
We review a grant of summary judgment de novo, applying the same standards as the district court. Am. Home Assurance Co. v. United Space Alliance, LLC, 378 F.3d 482, 486 (5th Cir.2004). “A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.” Id.; see also Fed.R.Civ.P. 56(a).
III.
A. Sex Discrimination
Hague must “exhaust [her] administrative remedies before bringing suit under Title VII.” Price v. Choctaw Glove & Safety Co., 459 F.3d 595, 598 (5th Cir.2006). An employee may file a lawsuit “not only upon the specific complaints made by the employee’s initial EEOC charge, but also upon any kind of discrimination like or related to the charge’s allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.” Fellows v. Universal Rests., Inc., 701 F.2d 447, 451 (5th Cir.1983).
Hague failed to include a specific sex discrimination claim on her EEOC intake sheet and consequently did not exhaust her administrative remedies on that claim. Although Hague argues that she fulfilled the purpose of the court’s exhaustion requirement because her EEOC complaint and her complaint in this lawsuit put UTHSC on notice of a sex discrimination claim, the details listed on her complaint concern only her allegations of harassment,[5] Thus, Hague’s subsequent claim regarding sex discrimination not based upon harassment falls outside “the scope of the EEOC investigation” and could not reasonably be expected to grow out of her initial charge of sexual harassment.
B. Sexual Harassment
Hague also claims that Dr. Manifold’s conduct regarding the sexually explicit doll and reading of the internet article amounted to sexual harassment. She argues that the district court erred in failing to analyze her complaint as a quid pro quo claim, because she alleges harassment by a supervisor resulting in her non-renewal, a “tangible employment action.” See Casiano v. AT& T Corp., 213 F.3d 278, 283 (5th Cir.2000).
However, Hague’s sexual harassment claim fails because Dr. Manifold was not her supervisor. Dr. Manifold did not have the power to take tangible employment actions against her.[6] See Vance v. Ball *332 State Univ., -U.S.-, 133 S.Ct. 2434, 2443, 186 L.Ed.2d 565 (2013) (holding that an “employer may be vicariously liable [under Title VII] for an employee’s unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim”). The record reflects (and no competent evidence contradicts) that Hague did not report to Dr. Manifold and that Dr. Manifold did not have the authority to make employment decisions regarding Hague, including her contract non-renewal. Further, Hague’s allegations of Dr. Manifold’s conduct do not fit the definition of quid pro quo, in which “the grant or denial of employment advancement, such as a promotion or raise, depends upon whether an employee acquiesces to unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature.” Donaldson v. CDB Inc., 335 Fed.Appx. 494, 500 (5th Cir.2009).
Hague’s co-worker harassment claim is therefore properly analyzed under the standards for hostile work environment. See Woods v. Delta Beverage Group, Inc., 274 F.3d 295, 298 (5th Cir.2001). A hostile work environment claim consists of five elements: (1) membership in a protected group; (2) unwelcome sexual harassment; (3) harassment complained of is based on sex; (4) harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. Id. We agree with the district court that Hague failed to raise an issue of material fact concerning the fourth element— whether the harassment complained of affected a term, condition, or privilege of employment.
For harassment to affect a term, condition, or privilege of employment, it must be both objectively and subjectively abusive. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). “‘[Sjimple teasing,’ offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the ‘terms and conditions’ of employment.’ ” Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citation omitted). To determine whether conduct is objectively abusive, we look to the totality of the circumstances: the frequency of discriminatory conduct, its severity, whether it involves physical threats or humiliation as opposed to mere offensive utterances, whether it unreasonably interferes with an employee’s work performance, and whether the complained-of conduct undermined the plaintiffs workplace competence. See Hockman v. Westward Commc’ns, L.L.C., 407 F.3d 317, 325-26 (5th Cir.2004).
Hague identifies only two instances of sexually harassing conduct — the magazine article and the doll — only one of which was directed at her. No physical or sexual advances were made to Hague, as is characteristic of many hostile environment claims. See, e.g., Waltman v. Int’l Paper Co., 875 F.2d 468, 477-78 (5th Cir.1989). Nor were offensive comments made frequently over a period of time. See, e.g., Farpella-Crosby v. Horizon Health Care, 97 F.3d 803, 806 (5th Cir.1996). The record lacks evidence on any other factor suggesting that Dr. Manifold’s conduct affected a term, condition, or privilege of Hague’s employment. We conclude that these incidents described by Hague, though wholly inappropriate, do not evince sufficiently pervasive hostility toward her as a matter of law, and therefore, the district court properly granted summary judgment for UTHSC on Hague’s sexual harassment claim.
*333 C. Retaliation
Finally, Hague appeals the district court’s grant of summary judgment in favor of UTHSC on her retaliation claim. Title VII prohibits an employer from taking an adverse employment action against an employee because she has filed an employment discrimination charge. See 42 U.S.C. § 2000e-3(a); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 62, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). Hague contends that UTHSC unlawfully retaliated against her in response to her discrimination and harassment claims, and argues that UTHSC’s decision not to renew her contract is a self-evident showing of retaliation.
To establish a prima facie case of retaliation under Title VII, a plaintiff “must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action.” McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir.2007). Pursuant to the framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), “[i]f the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer’s reason is actually a pretext for retaliation.” LeMaire v. La. Dep’t of Transp. & Dev., 480 F.3d 383, 388-89 (5th Cir.2007) (internal citation omitted).
An employee establishes pretext by showing that the adverse action would not have occurred “but for” the employer’s retaliatory reason for the action. Univ. of Tex. Sw. Med. Ctr. v. Nassar, — U.S. -, 133 S.Ct. 2517, 2533-34, 186 L.Ed.2d 503 (2013). In order to avoid summary judgment, the plaintiff must show “a conflict in substantial evidence” on the question of whether the employer would not have taken the action “but for” the protected activity. Long v. Eastfield Coll., 88 F.3d 300, 308 (5th Cir.1996) (internal quotation marks omitted).

Prima Facie Case

UTHSC contends that the summary judgment should be affirmed as to the retaliation claim, stating that Hague did not explicitly challenge the district court’s ruling that she failed to establish her prima facie case. This Court has frequently cited to our rule that an Appellant must attack all the bases for the judgment of the district court. See Brinkmann v. Dallas Cnty. Deputy Sheriff Abner, 813 F.2d 744, 748 (5th Cir.1987) (explaining that the Court “will not raise and discuss legal issues that [Appellant] has failed to assert”). However, in this case, while the district court discussed the causal connection element of her prima facie case, a careful reading of the opinion reveals that the court did not make a determination as to whether Hague had established a causal connection between her complaint and UTHSC’s decision not to renew her contract. Instead, the court suggested that Hague may not have shown a causal connection, focusing on precedent that held that the temporal proximity between the protected activity and the adverse employment action was insufficient to establish a causal connection. The district court then stated that even if Hague had made a prima facie case, it found she had failed to show pretext.
In her brief, Hague expressly states that she “has elected to pursue this case under the pretext alternative.” We understand why Hague did not specifically challenge the district court’s holding as to her prima facie case because the district court did not *334 definitively rule on her prima facie case. Under these circumstances, we cannot fault Hague for not making this challenge. Accordingly, in light of no holding on the issue of a prima facie case, and as set forth infra, our conclusion that Hague has demonstrated pretext, we think it best to vacate and remand the judgment with respect to the retaliation claim to allow the district court to determine in the first instance whether Hague established a prima facie case of retaliation.[7]
The dissent disagrees with our conclusion that on remand the district court must definitively address in the first instance whether Hague established a prima facie case. Instead, relying on United States Postal Serv. Brd. Of Governors v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), the dissent would hold that because UTHSC produced legitimate, non-retaliatory reasons for the adverse employment action, it is irrelevant whether Hague actually established a prima facie case. However, this Court has repeatedly interpreted Aikens to apply only after a trial. In Arismendez v. Nightingale Home Health Care, Inc., the employer argued that the employee had failed to establish a prima facie case of discrimination. 493 F.3d 602, 607 (5th Cir.2007). This Court rejected that argument, explaining that “[b]ecause this case was ‘fully tried on the merits,’ the McDonnell Douglas burden-shifting framework ‘drops from the case.’ ” Id. (quoting Aikens, 460 U.S. at 713-14, 715, 103 S.Ct. 1478). This Court further explained that “after trial, the sufficiency of the prima facie case as such is no longer relevant.” Id. (emphasis added) (quoting Russell v. McKinney Hosp. Venture, 235 F.3d 219, 224 n. 5 (5th Cir.2000) (quoting Aikens, 460 U.S. at 715, 103 S.Ct. 1478) (internal quotation marks omitted)). This Court’s opinions in Arismendez and Russell clearly interpreted the rule in Ai-kens to apply to cases that have gone to trial. Accord Barnes v. Yellow Freight Sys. Inc., 778 F.2d 1096, 1100 (5th Cir.1985); Avant v. S. Cen. Bell Tele. Co., 716 F.2d 1083, 1086-87 (5th Cir.1983). Moreover, under McDonnell Douglas, at the summary judgment stage the burden of producing a legitimate, nondiscriminatory reason only shifts to the employer after the plaintiff has established a prima facie case. There is no authority in this Circuit that would allow the employee’s burden of establishing a prima facie case to be extinguished simply because an employer exercises its right to challenge the prima facie *335 case and also proffers a legitimate, nondiscriminatory reason for its decision.
Nevertheless, citing Walther v. Lone Star Gas Co., 952 F.2d 119, 122 (5th Cir.1992), the dissent states that this Court has “followed Aikens and found that the plaintiff’s prima facie case becomes irrelevant once the defendant meets his burden of production.” Dissenting opinion at 339. However, in that case, this Court specifically explained that “when a case has been tried on the merits, a reviewing appellate court need not address the sufficiency of plaintiff’s prima facie case, and may instead proceed directly to the ultimate question whether plaintiff has produced sufficient evidence for a jury to find that discrimination has occurred.” Walther, 952 F.2d at 122-23. Because the instant case was not tried on the merits, Aikens does not apply. Further, we do not read the Fifth Circuit cases cited by the dissent as holding that, during the summary judgment stage, a plaintiffs prima facie case becomes immaterial once an employer produces legitimate, non-retaliatory reasons for the adverse employment action. In any event, to the extent the cases can be so construed, we are bound by our earlier precedent, Walther, which applies Aikens to cases that have been tried on the merits. See Rios v. City of Del Rio, Tex., 444 F.3d 417, 425 n. 8 (5th Cir.2006) (stating that “where two previous holdings or lines of precedent conflict the earlier opinion controls”). Finally, we note that in two unpublished opinions this Court has expressly declined to adopt the rule that whether a plaintiff has established a prima facie case becomes irrelevant once the defendant produces legitimate reasons for the adverse employment action in a summary judgment case. See Stallworth v. Singing River Health System, 469 Fed. Appx. 369, 372 (5th Cir.2012); Atterberry v. City of Laurel, 401 Fed.Appx. 869, 871 n. 1 (5th Cir.2010). Accordingly, until the Supreme Court or this Court, sitting en banc, rules otherwise, we follow our precedent and hold that the district court must address whether Hague established a pri-ma facie case of retaliation.[8]

Pretext

Assuming that Hague has demonstrated a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. Before the district court, UTHSC relied upon Dr. Vil-lers’s testimony in which he had given numerous reasons for his decision not to renew Hague’s contract. We think it significant that, although Dr. Villers refused to give Hague any reason when he notified her that her contract was not being renewed, during the instant litigation Dr. Villers was able to supply a laundry list of reasons. Further, Dr. Villers admitted during his deposition that he never provided Hague anything in writing regarding her alleged infractions.[9]
*336 In any event, once UTHSC satisfies the burden of producing its reasons, Hague must demonstrate that the reasons are actually pretext for retaliation. An employee establishes pretext by showing that the adverse action would not have occurred “but for” the employer’s retaliatory reason for the action. Nassar, 133 S.Ct. at 2533-34. In order to avoid summary judgment, Hague must show “a conflict in substantial evidence” on the question of whether the employer would not have taken the action “but for” the protected activity. Long, 88 F.3d at 308 (internal quotation marks omitted). We note that the Supreme Court has explained that evidence establishing the prima facie case and any inferences drawn therefrom may also be considered when determining whether pretext has been shown. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); accord Edwards v. Wal-Mart Stores, Inc., 247 F.3d 241 (table), 2001 WL 43546, at *3 (5th Cir.2001).
Here, the district court held that “even if Hague could establish a causal connection based on temporal proximity— thereby making out a prima facie case of retaliation — her claim fails because UTHSC has offered, and she has not rebutted, legitimate, non-retaliatory reasons for its decision not to renew Hague’s employment for another term.” We disagree and conclude that Hague’s evidence raises a substantial conflict regarding whether her employer would have decided to renew her contract but for her reported complaints.
The district court stated that the only summary judgment evidence Hague offered to rebut UTHSC’s reasons was her performance evaluation. However, in her response to UTHSC’s motion for summary judgment, Hague also pointed out that UTHSC did not renew the contract of other female employees who had supported Hague’s complaint during the investigation. As such, the district court’s analysis overlooks Hague’s reliance on the termination of two other female employees who supported Hague’s complaint as evidence of pretext. One of the employees, Esther Tarango, was an administrative assistant at UTHSC. Dr. Manifold had given Tarango the previously mentioned sexually explicit doll, and it was that incident that prompted Hague to file a sexual harassment complaint against Dr. Manifold. In Tarango’s deposition, she testified that she brought the doll to the attention of her supervisor. Tarango also testified that Dr. Blankmeyer interviewed her during the investigation of Hague’s complaint. During the interview, Tarango showed the doll to Dr. Blankmeyer and told Dr. Blank-meyer that she found the doll offensive.
Additionally, the evidence shows a conflict regarding Dr. Villers’s stated reasons for not renewing Tarango’s contract. Nasti v. CIBA Specialty Chemicals Corp., 492 F.3d 589, 594 (5th Cir.2007) (“A court may infer pretext where a defendant has provided inconsistent or conflicting explanations for its conduct.”).[10] According to Tarango’s testimony, when Dr. Villers notified her that that her contract was not being renewed, he said “due to the budget cuts, we’re going to have to let you go.” However, during his deposition, Dr. Villers testified he did not renew Tarango’s con *337 tract because he “needed a staff position of a higher category according to the HR for the school and that higher category would include a higher level of experience or education background.”[11]
With respect to the timeline of these events, Tarango was terminated at the beginning of July 2011, and Hague had been notified that her contract would not be renewed on June 20, 2011. Thus, Tarango, who had supported Hague’s complaint during the investigation, was terminated shortly after Hague was given notice of her non-renewal.
As for the other employee who supported Hague’s complaint, Hague testified that her colleague, Lou Ann Mullins, complained to Dr. Juanita Wallace about the doll incident during the same week that Hague did. Dr. Villers notified Mullins that her contract was not being renewed at the same meeting in which he notified Hague. Similar to his testimony regarding the non-renewal of Hague’s contract, Dr. Villers testified that he did not renew Mullins’s contract because he “had issues of trust with her as well.”
We now turn to Hague’s complaint regarding Dr. Villers. In her grievance, Hague complained, among other things, that right after an incident in which Dr. Villers raised his voice at her, she was walking through a doorway and “Dr. Vil-lers was entering and he physically bumped into me and neither apologized for his actions nor acknowledged my presence.” During the grievance proceedings at UTHSC, Dr. Villers denied any physical contact with Hague during the incident. During his deposition, Dr. Villers testified that he made the decision not to renew Hague’s contract because “it came down to issues of trust.” When explaining what issues of trust he had with Hague, Dr. Villers referenced, among other things, Hague’s report in which she claimed he bumped into her. Dr. Villers testified that Hague “said that I had pushed her or shoved her, brushed up against her and — I don’t recall the exact wording, but something in my mind implied that she was saying that I assaulted her and that was not — I couldn’t accept her either lying or misrepresenting something that had occurred.” Accordingly, when asked to explain the basis for his decision not to renew her contract, Dr. Villers expressly referenced a grievance Hague had filed against him.[12] Although Dr. Villers testified that “[i]t wasn’t the issue of the reporting,” his testimony raises a fact issue as to whether the decision not to renew her contract was caused by her filing the grievance.
Hague also relied upon the deposition testimony of her direct supervisor, Joe Lindstrom, to rebut UTHSC’s proffered reasons. For example, Lindstrom’s testimony rebutted UTHSC’s reason that Hague improperly documented her hours on the time sheets. Lindstrom’s testimony also rebutted UTHSC’s reason that Hague’s taking patient files home constituted a privacy violation. With respect to Lindstrom’s allegation that Hague inaccurately portrayed her faculty title as indicating she was employed by the San Anto *338 nio Fire Department, Lindstrom testified that that issue was not specific to Hague; instead, it was an issue pertaining to the entire staff. As for UTHSC’s allegation that Hague failed to attend a particular conference and notify her supervisors, Lindstrom testified Hague did advise him regarding her inability to attend. He further testified that he did not consider her absence at the conference a disciplinary problem. UTHSC also had pointed to Hague’s failure to pass a written examination on the new operating procedures that had been implemented. Lindstrom testified that approximately four employees did not pass the initial examination; however, all the employees, including Hague, eventually passed the test.
In conclusion, we have reviewed the record and are convinced that, viewing the evidence in the light most favorable to Hague, she has raised a fact issue as to whether UTHSC would have renewed her contract but for her complaints. Simply put, a reasonable jury could conclude that UTHSC’s reasons for not renewing Hague’s contract were pretextual.
For the above reasons, the district court’s judgment is AFFIRMED in part, VACATED in part and REMANDED for further proceedings.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

. Dr. Blankmeyer is responsible for civil rights compliance issues pertaining to faculty, residents, students, and visitors.

. Although the investigation found that “the alleged event clearly does not rise to the level of sexual harassment,” the memoranda concluded that Dr. Manifold's actions did "meet parts of the definition of sexual misconduct” and were "unprofessional and inappropriate for the workplace or classroom.” Hague later testified that, subsequent to Dr. Manifold’s reprimand, no further incidents of alleged sexual harassment occurred.

. Wallace responded to the initial grievance, which Hague made in person on in September of 2010, by requesting that Hague provide a more concise and clear statement of the required elements for the grievance, in order to comply with internal policy. Hague then filed her formal grievance in October.

. Dr. Murphy's summary of the grievance indicates that Hague denied that the differential treatment stemmed from gender discrimination.

. Hague did not allege any facts in her EEOC form that clearly set out a claim for disparate treatment on the basis of her sex. See Clark v. Kraft Foods, Inc., 18 F.3d 1278, 1280 n. 4 (5th Cir.1994) (citing cases for the proposition that sexual harassment and disparate treatment are distinct for exhaustion of EEOC administrative remedies). Moreover, Hague’s intake sheet could not possibly have included such a grievance because the record indicates that she had not yet received the letter notifying her that her contract would not be renewed. Therefore, she did not complain of gender bias in non-renewal of appointment, or indicate that her replacement was by a male employee.

. The summary judgment record indicates that Hague was employed as a full-time instructor in the Continuing Education Division. Her immediate supervisor was Joe Lindstrom, who reported directly to the Department Chair, Dr. Villers. Lindstrom conducted Hague's performance evaluations, and gave hiring input to Dr. Villers. The Department organizational chart indicates that Dr. Manifold, the Medical Director, did not have supervisory power over Hague's employment.

. We note that, on remand, the district court's analysis of whether Hague has shown a causal connection between her complaint and UTHSC’s decision not to renew her contract should not be limited solely to the temporal proximity between the two events. Indeed, this Court has explained that a district court properly weighs temporal proximity as part of the “entire calculation of whether [the employee] had shown a causal connection between the protected activity” and the adverse employment action. Shirley v. Chrysler First, Inc., 970 F.2d 39, 44 (5th Cir.1992). As discussed more fully in our pretext analysis, in addition to temporal proximity, Hague has pointed to Dr. Villers’s deposition testimony in which Dr. Villers testified that he declined to renew Hague's contract, in part, because of “issues of trust.” Hague has also pointed to the termination of two other female employees who had supported Hague's complaint, and UTHSC’s lack of contemporaneous explanation of the reasons for Hague’s non-renewal of her contract. Cf. id. at 43-44 (holding that, despite a 14-month gap between the protected activity and adverse employment action, a plaintiff had established a prima facie case of causation by pointing to evidence that the employer frequently referenced and made disparaging comments about the plaintiff’s EEOC complaint and by drawing a comparison between pre- and post-complaint work performance evaluations). Accordingly, we leave for the district court to determine in the first instance whether Hague’s evidence demonstrates a causal connection between her filing a grievance and UTHSC’s decision not to renew her employment contract.

. We note that there is a circuit split with respect to whether the holding in Aikens applies at the summary judgment stage or only applies once there is a trial on the merits. Compare Brady v. Office of Sergeant at Arms, 520 F.3d 490, 493-94 (D.C.Cir.2008) (applying Aikens at summary judgment); Riser v. Target Corp., 458 F.3d 817, 820-21 (8th Cir.2006) (same); Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 661 (6th Cir.2000) (same); Lindemann v. Mobil Oil Corp., 141 F.3d 290, 296 (7th Cir.1998) (same), with Pepper v. Precision Valve Corp., 526 Fed.Appx. 335, 336 n. * (4th Cir.2013) (declining to apply Aikens at the summary judgment stage); Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1202 n. 12 (10th Cir.2008) (declining to find that a prima facie case is immaterial at the summary judgment stage); Collado v. United Parcel Serv., Co., 419 F.3d 1143, 1150 (11th Cir.2005) (recognizing that after a trial on the merits, a court should not revisit whether a plaintiff established a prima facie case).

. Dr. Villers did testify that he verbally counseled her regarding his concerns.

. Although this evidence shows pretext with respect to UTHSC’s reasons for Tarango's loss of employment, we find it relevant in light of the similarity of Tarango's support of Hague's complaint.

. By the time of her deposition, Tarango had secured employment in another department at UTHSC.

. Indeed, Dr. Villers’s testimony arguably may be viewed as direct evidence of discrimination because a jury could find that this testimony proves that retaliation was the reason for the non-renewal of the contract without any inferences or presumptions. Cf. Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 958 (5th Cir.1993) ("Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions.”).