Barbara PULEO, Plaintiff,

v.

TEXANA MHMR CENTER, Defendant.

CIVIL ACTION NO. 3:13-cv-00393

United States District Court,
S.D. Texas, Galveston Division.

Signed 05/09/2016

Gordon R. Cooper, II, Attorney at Law, Houston, TX, for Plaintiff.

William Scott Helfand, Charles T. Jeremiah, Katherine L. Petroski, Chamberlain Hrdlicka et al, Houston, TX, for Defendant.

## MEMORANDUM AND ORDER

GEORGE C. HANKS, JR., UNITED STATES DISTRICT JUDGE

Barbara Puleo filed this lawsuit against Texana MHMR Center ("Texana"), alleging that it violated Title VII of the Civil Rights Act of 1964 by discriminating against her on the basis of sex, sexual harassment, and retaliating against her. She also alleges that Texana violated the Age Discrimination in Employment Act (the "ADEA") by discriminating against her because of her age.

Texana has now moved for summary judgment on all of Puleo's claims. (Dkt. 21, 48). Essentially, Texana contends that there is no evidence to support Puleo's allegations of gender or age discrimination or retaliation, and that Puleo's discharge was proper because she violated Texana's internal policies regarding confidentiality and HIPAA compliance. The Court hereby **GRANTS** summary judgment in favor of Texana.

## FACTUAL BACKGROUND

Texana is non-profit organization that provides mental health care and services to residents in Austin, Colorado, Fort Bend, Matagorda, Waller, and Wharton Counties. Texana alleges that is a unit of local government under Texas law. Texana has approximately 800 employees.

Puleo was a case manager at Texana's Bay City clinic from March 2003 until November 2014. A number of Puleo's fellow case managers were female, and only one was male. Puleo's supervisors were both males, Willie Welch, the Clinic Manager, and Frank Solis, the Clinical Team Leader.

Puleo alleges that, prior to August 2012, she performed her duties as a case manager so well that she had earned "the highest productivity points per assigned client." However, Puleo alleges that she was also at that time being subjected to repeated, but unspecified, "acts of unlawful discrimination which was motivated by her Sex and Gender (female)." According to Puleo, these acts caused her to take an extended medical leave from August 2012 through October 2012.

When she returned from medical leave in October 2012, Puleo alleges that the conditions of her employment had been altered and that she had, in effect, been demoted by being assigned to a group of clients known as "SP-1 clients," and this change caused her productivity to decline. In contrast, Puleo alleges that her male co-worker had been assigned eight new "SP-3" clients during her leave, "which had the effect of enhancing his productivity." After Puleo filed two internal written complaints in February 2013, she was assigned additional new SP-3 clients, but she also alleges that this male co-worker continued to be assigned new SP-3 clients as well.

According to Puleo, after she formally complained about the re-assignment of

clients, both Welch and Solis began to retaliate against her and they "directly harassed her." Specifically, she alleges that, on February 18, 2013, Solis "question[ed] [her] in a harsh and degrading manner" about a particular incident, and that this incident was negatively reported on her yearly evaluation on February 20, 2013. Puleo also alleges that, during a subsequent February 20, 2013 meeting, both Welch and Solis "spoke[ ] to [her] in a very harsh and degrading manner," and that both Solis and Welch "interrupt[ed] her work," and they negatively reviewed her work, even though "Welch and Frank Solis knew that this was harassment and that they were intentionally withholding the tools needed to accomplish her expected performance goals." Puleo also alleges that Welch intentionally miscalculated her hours worked in April 2012 and February 2013, and that he refused to correct these mistakes even though Puleo inform him of the correct numbers and requested an adjustment in her performance rating. Puleo also alleges that her male coworker was held to "different standards," and that he was assigned better work while she was "prevented from doing her job." According to Puleo, all of these acts were done "to harass her and [were] motivated her sex and Gender and intended to be in retaliation against on account of her complaints about her sex and gender discrimination."

Further, Puleo alleges that she was discriminated against "on account of her age and protected activity" because she unsuccessfully applied for another position as "MCOT day time screener at the Wharton Clinic" in April 2013. Puleo alleges that she applied "when the position was vacant, that she was the best qualified candidate, that after she applied for the position, [Texana] continued to interview candidates and ultimately hired a much younger person with less experience and qualifications than Plaintiff." Puleo alleges she was denied this position because Texana improp-erly discriminated her on the basis of gender, age, and her past protected activity of internally reporting alleged harassment.

Puleo filed a Charge of Discrimination with the Equal Employment Opportunity Commission on May 10, 2013, complaining of "discrimination which was motivated by my female gender," including better work assignments being given to her male co-worker, and that Solis and Welch spoke "harshly" to her, negatively reviewed her performance, and erroneously calculated her work hours, while her male co-worker was treated more favorably. She also complained that she had applied for a transfer to a new position, but had been denied that transfer due to age discrimination because she was approximately 52 years old.

Puleo filed this lawsuit on October 29, 2013. In November 2014, Puleo was fired by Texana. Puleo then added an additional cause of action, claiming that she was improperly terminated because she provided confidential documents to her attorney for use and discovery in this lawsuit, an act which Texana contended violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). However, Puleo argues that her termination was improper because "it was also motivated by her sex." Further, Puleo contends that a male coworker also violated HIPAA during his employment, but he was not terminated or disciplined. Puleo filed a second Charge of Discrimination with the EEOC on December 29, 2014, alleging that Texana employees Dot Preisler and Lori Marcus had terminated her for violating HIPAA after she provided documents gained during her employment to her attorney for use in this lawsuit. Puleo alleged that another male employee had also violated HIPAA by "transporting two patients (who are not related) in the same company vehicle for their medical appointments."

Texana now moves for summary judgment on all of Puleo's claims. The Court has considered the relevant motions, the briefing, and the record in this case. The Court finds that summary judgment should be **GRANTED** for Texana.

### STANDARD OF REVIEW

 Texana's Motion for Summary Judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under this rule, a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.*

 In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers,* 596 F.3d 260, 266 (5th Cir.2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes County, Mississippi,* 678 F.3d 344, 348 (5th Cir. 2012) (quoting *TIG Ins. Co. v. Sedgwick James of Washington,* 276 F.3d 754, 759 (5th Cir.2002)); *see also Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence). If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-movant to provide "specific facts showing the existence of a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

 In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little,* 37 F.3d at 1075. "[T]he nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Id.* (quoting *Armstrong v. City of Dallas,* 997 F.2d 62, 67 (5th Cir. 1993)).

The summary judgment record in this case is unusually voluminous and duplicative. Texana has submitted 97 pages of exhibits to support its first motion for summary judgment, motion for reconsideration, and second motion for summary judgment. In response, Puleo has submitted several filings and supplements, and she has submitted an astonishing 1,210 pages of exhibits. Further, the Court notes that much of Puleo's briefing is disjointed and difficult to follow.

 In this context, the Court is mindful that Puleo, as the nonmovant, "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific

facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "The nonmovant is also required to articulate the precise manner in which the submitted or identified evidence supports his or her claim." *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir.2004). As such, "when evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir.2003). Nonetheless, to the best of its ability, the Court has carefully considered the allegations in Puleo's pleadings and the arguments raised by counsel, and has dutifully consulted the summary judgment evidence to which she points in her briefing.

## APPLICABLE LAW

Title VII prohibits an employer from discharging or otherwise discriminating against any individual because of such individual's race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2(a)(1), and the ADEA prohibits similar treatment on the basis of age. *See* 29 U.S.C. § 623(a)(1); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir.2004). Title VII also prohibits an employer from retaliating against an employee for opposing an unlawful employment practice. 42 U.S.C. § 2000e–3.

Puleo alleges sexual harassment/hostile work environment, disparate treatment, and retaliation claims under Title VII and the ADEA.

## ANALYSIS

### A. "Sexual Harassment"/Hostile Work Environment

Texana contends it is entitled to summary judgment on Puleo's claim of "sexual harassment" because Puleo failed to make this assertion in her Charge of Discrimina-

tion filed with the Equal Employment Opportunity Commission. Further, Texana contends there is no evidence of any "sexual harassment" creating a hostile work environment, and that Puleo also failed to take advantage of Texana's internal policies and procedures for addressing any such sexual harassment.

### 1. Exhaustion requirements under Title VII

"Title VII requires employees to exhaust their administrative remedies before seeking judicial relief." *Stone v. La. Dep't of Revenue*, 590 Fed.Appx. 332, 337–38 (5th Cir.2014). Such a charge must state "sufficient facts to trigger an EEOC investigation and to put an employer on notice of the[ir] existence and nature." *Id.*

The filing of an EEOC charge "is a precondition to filing suit in district court." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir.2002) (citation omitted). Administrative remedies are considered exhausted for any claims which can reasonably be expected to grow out of the charge of discrimination. *Castro v. Tex. Dep't of Crim. Just.*, 541 Fed.Appx. 374, 379 (5th Cir.2013). Title VII was not designed for sophisticated litigants and most complaints are initiated *pro se*, and therefore should be construed liberally. *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir.2006). A plaintiff is not required to "check a certain box or recite a specific incantation to exhaust his or her administrative remedies." *Id.* In this context, the Fifth Circuit has noted that "an employee may file a lawsuit 'not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.'" *Hague v. Univ. of Texas Health Sci. Ctr.*

*at San Antonio,* 560 Fed.Appx. 328, 331 (5th Cir.2014) (citing *Fellows v. Universal Rests., Inc.,* 701 F.2d 447, 451 (5th Cir. 1983)).

Texana contends that, "although EEOC Charges are broadly construed, merely checking the box to allege discrimination based upon 'sex' does not give the EEOC or the employer the required notice of a sexual harassment or hostile environment claim." The Court agrees. Puleo's first EEOC Charge is strikingly similar to her complaint in this Court, in that it alleges that Welch and Solis spoke to her harshly, rated her unfairly, and generally prevented her from succeeding at her job. It also alleges that her male co-worker received preferential treatment, "while I am being prevented from doing my job because by not being assigned clients on the same terms and conditions as [he is,] which will cause me to not meet my goals and hinder my career development and compensation which I allege is motivated by sex discrimination and in retaliation for my complaints about gender discrimination." Puleo's EEOC charge also states that she is being represented in that charge by the same attorney who also represents her in this lawsuit.

Her second charge relates to her termination, and also fails to allege any specifics of a hostile work environment due to "sexual harassment."

In her summary judgment response, Puleo makes several somewhat confounding statements. Puleo first admits that "[i]n so far as her pleading[s] are concerned, [she] does not claim sexual harassment" but she then argues that "she does however clearly allege harassment and it could have been motivated by her sex." This leads the Court to conclude that Puleo's allegations of "sexual harassment" may be a misnomer, and she is instead actually seeking to state a claim for disparate treatment under Title VII. *See, e.g., Clark v. Kraft Foods, Inc.,* 18 F.3d 1278, 1280 n. 4 (5th Cir.1994) (citing cases for the proposition that sexual harassment and disparate treatment are distinct for exhaustion of EEOC administrative remedies); *Lacy v. Dallas Cowboys Football Club,* No. 3:11–CV–0300–B, 2012 WL 2795979, at *4 (N.D.Tex. July 10, 2012) ("[A]n assertion of sex-based disparate treatment does not exhaust a party's administrative remedies for sexual harassment; these two forms of discrimination are treated as "distinct.")(citing *Clark v. Kraft Foods, Inc.,* 18 F.3d 1278, 1280 n .4 (5th Cir.1994)). Further, "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the Court." *Cutrera v. Bd. of Supervisors of La. State Univ.,* 429 F.3d 108, 113 (5th Cir.2005) (citation omitted); *see also Ellis v. Crawford,* 2007 WL 1624773, at * 11 (N.D.Tex. June 6, 2007) (Fitzwater, J.) (holding that plaintiffs could not rely on unpled hostile work environment claim raised for the first time in summary judgment response).

After reviewing Puleo's EEOC filings, the Court finds that she has not exhausted her claim for "sexual harassment." In fact, this case presents an almost exactly reversed mirror-image set of facts to those in *Hague v. Univ. of Texas Health Sci. Ctr.,* 560 Fed.Appx. at 331. In *Hague,* a nurse filed an internal complaint alleging that one supervisor read sexually explicit magazine articles aloud during a meeting and gave one of her co-workers a sexually explicit doll, and she later complained that another supervisor "treated employees differently and fostered an uninviting work environment." 560 Fed.Appx. at 330. She subsequently filed an EEOC complaint about the disparate treatment, but she "failed to include a specific sex discrimination claim on her EEOC intake sheet." *Id.* Accordingly, the Fifth Circuit

found that she had failed to exhaust her claim regarding the sexually explicit magazines and doll. Similarly, in this case, the Court finds that Puleo's EEOC complaints failed to include any allegations of sexual harassment or a hostile work environment due to gender.

### 2. Elements of a sexual harassment/hostile work environment claim

■■■ Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of that individual's sex. 42 U.S.C. § 2000e-2(a)(1). Sexual harassment is a form of discriminatory treatment. *Cherry v. Shaw Coastal, Inc.*, 668 F.3d 182, 188 (5th Cir.2012) (citing *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). Generally, there are two kinds of sexual harassment claims in this context: (a) allegations that sexual harassment by a supervisor resulted in a "tangible employment action" against the plaintiff, *i.e.*, a "quid pro quo" suit, in which "the court must determine whether the tangible employment action suffered by the employee resulted from [her] acceptance or rejection of [her] supervisor's alleged sexual harassment"; or (b) allegations that a supervisor's sexual harassment created a "hostile work environment." *See, e.g., Giddens v. Cmty. Educ. Centers, Inc.*, 540 Fed.Appx. 381, 387 (5th Cir.2013) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Casiano v. AT & T Corp.*, 213 F.3d 278, 283–84 (5th Cir.2000)). Texana contends

that Puleo's only allegations are that she was spoken to "harshly" and that a male co-worker received preferential treatment, and Texana contends that these alleged acts are not—as a matter of law—the kind of "sexual harassment" actionable under Title VII. The Court agrees.

■■■ Despite her repeated use of the phrase "sexual harassment," Puleo's pleadings do not actually allege any unwelcome sexual advances, nor do they plead any "conduct of a sexual nature." *See, e.g., Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 68, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). ("The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'"); *Rodriguez v. City of Houston*, 250 F.Supp.2d 691, 699 (S.D.Tex.2003) (citing *Jones v. Flagship Int'l*, 793 F.2d 714, 719 (5th Cir.1986)) ("'[U]nwelcome sexual harassment' is defined, in this circuit, as 'conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or unincited and is undesirable or offensive to the employee.'").[1] Similarly, the summary judgment evidence to which Puleo points does not show any conduct of a sexual nature by Solis or Welch that created a hostile work environment. Accordingly, the Court finds that Texana is entitled to summary judgment in its favor on Puleo's claims of "sexual harassment" in this lawsuit.

### B. Gender Discrimination

■■■ Next, Texana contends that Puleo cannot present any evidence of any other type of gender discrimination under Title VII. In Title VII sex discrimination cases, federal courts employ a burden-shifting framework first articulated by the Su-

---

1. Because the Court finds that Puleo has failed to exhaust her remedies with respect to her allegations of "sexual harassment," and because her pleadings do not actually state a claim for actionable "sexual harassment". or

hostile work environment under Title VII, the Court does not reach the issue of whether Texana is entitled to prevail on its *"Ellerth/Faragher"* affirmative defense.

preme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Initially, the plaintiff has the burden of persuasion of establishing a prima facie case of discrimination. In order to establish a prima facie case of discrimination, Puleo must prove that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the circumstances are such that an unlawful discriminatory reason for the adverse employment action can be inferred, *i.e.*, that she was "treated less favorably than those outside the protected class." *See McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817; *Okoye v. Univ. of Texas Houston Health Science Center*, 245 F.3d 507, 512–13 (5th Cir.2001); *Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir.1999).

■■■ "The burden of establishing a prima facie case ... is not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The prima facie case is necessarily a flexible standard that must be adapted to the factual circumstances of the case. *Id.* at 253 n. 6, 101 S.Ct. 1089; *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. 1817. Nonetheless, "[t]he prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's [discipline]." *Burdine*, 450 U.S. at 253–54, 101 S.Ct. 1089. "[T]he prima facie case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Id.* at 254, 101 S.Ct. 1089.

■■■ If Puleo satisfies all four prongs, Texana has the burden of production to articulate a legitimate, non-discriminatory reason for the alleged adverse employment action. This burden of production involves

"no credibility assessment." *Fairchild v. All American Check Cashing, Inc.*, 815 F.3d 959, 967 (5th Cir.2016).

Puleo then has the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant [i.e., the employer] were not its true reasons, but were a pretext for discrimination." *Id.* Alternatively, Puleo can prove that "the employer's reason[s], while true," were not the "only ... reasons for its conduct, [as] another 'motivating factor' [was] the plaintiff's protected characteristic." *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir.2007).

### 1. Puleo's allegations of disparate treatment during her employment and Texana's failure to grant her requested transfer

■■■ Texana contends that Puleo is unable to fulfill her burden of persuasion in the first step of the *McDonnell Douglas* framework because she cannot establish a prima facie case of sex discrimination because she never suffered an "adverse personnel action" other than her ultimate firing. Texana contends that disciplinary write-ups, allocation of work decisions, harsh words and "other various and sundry complaints" raised by Puleo about her treatment during her employment are not "adverse personnel actions" as a matter of law.

■■■ A plaintiff suffers an adverse employment action when there is "a significant change in [the plaintiff's] employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 268 (5th Cir.1998). For an action to be considered "adverse" it must go beyond "petty slights, minor annoyances, and simple lack of good manners." *Butler v. Exxon*

*Mobil Corp.*, 838 F.Supp.2d 473, 495-96 (M.D.La.2012) (citations omitted). Accordingly, allegations of unwarranted complaints about the quality of the plaintiff's work and unnecessary job scrutiny and criticisms are not considered adverse employment actions. *Id.*

Similarly, Texana contends that Puleo's claims about its failure to transfer her must fail because she cannot show that she was qualified for the new position, and because the position was ultimately filled by another female. A plaintiff is "qualified" for a position if the "objective requirements" for the position are met. *Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir.2003). Puleo insists that she was qualified for the job, and she points to the deposition of Nancy Jones as to raise a fact issue on this point. Puleo points out that Nancy Jones stated that the new position Puleo sought involved "the same kind of thing" that Puleo had already been doing for five years, and that Puleo was "qualified" for the new position. Dkt. 23-3, pg. 20, ln. 17-20; pg. 22, ln. 24 – pg. 23, ln. 1. However, Jones also then states that, although Puleo was not hired for the position, it was filled by another female who worked for Texana and who also reported to Welch. *Id.*, pg. 35, ln. 4 – pg. 36, ln. 14. Thus, Puleo has not brought forth any evidence to show that she was treated less favorably than any male candidates when she was not transferred to the new position.

Accordingly, the Court finds that Puleo has not carried her burden of showing that Texana discriminated against her on the basis of gender during the term of her employment and by failing to grant her a transfer to a different position.

### 2. Puleo's allegation that she was terminated because of her gender

The Court now turns to Puleo's allegation that she was improperly terminated because other Texana employees had violated the same policy at issue without being terminated.

In *Turner v. Kansas City Southern Railway Co.*, the Fifth Circuit stated that, "[i]n work-rule violation cases," such as the instant case, "a Title VII plaintiff may establish a prima facie case by showing 'either [1] that he did not violate the rule[,] or [2] that, if he did, [other employees outside of the protected class] who engaged in similar acts were not punished similarly.'" 675 F.3d 887, 893 (5th Cir.2012) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995)). "To establish a prima facie case in this [second] manner, [the plaintiff] must show that ... employees [who were not members of the plaintiff's protected class] were treated differently under circumstances 'nearly identical' to his." *Id.* "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* (citing *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir.2009) (footnotes omitted)). Additionally, the Fifth Circuit recently explained, to establish this fourth element, a plaintiff "is required to show ... that his 'conduct that *drew the adverse employment decision* [was] nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions.'" *Moghalu v. Bd. of Supervisors for the Univ. of Louisiana Sys. for Nw.*, No. 15–30559, 2016 WL 943619, at *4 (5th Cir. Mar. 11, 2016) (emphasis in original) (citing *Paske v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir.2015)).

Texana contends that Puleo cannot demonstrate that there are any male employ-

ees who also improperly accessed, copied, and disclosed private health client information but who were not also discharged. In support of its motion, Texana provided the affidavits of Lori Marcus, the Compliance Manager for Texana, and Dorothy Preisler, Texana's Human Resources Director. Marcus stated that she learned in November 2014 that Puleo and her attorney had obtained, and then disclosed, confidential client information during the discovery process in this lawsuit. Dkt. 48-1. Marcus then conducted an investigation where she learned that "Ms. Puleo's breach involved numerous clients" and "contained a substantial amount of HIPAA protected client information." She noted that "Ms. Puleo's breach was particularly egregious given the nature of some of the records disclosed including records related to substance abuse, which are deemed highly confidential under the statute." Marcus then recommended that Puleo "be discharged immediately." Marcus stated that she was aware of only one other Texana employee who had been accused of copying patient records for their own use, and the breach was not discovered until after that employee had already been terminated, presumably for other reasons. Marcus stated, "I certainly would have recommended firing had the individual still been employed with Texana as I would if any breach occurs in the future." Marcus also stated that Puleo's actions "clearly ... violated our policies implementing HIPAA law" and that the decision to terminate Puleo was "not the result of her gender, age or pending lawsuit, but strictly due to her admitted violation of HIPAA."

Preisler's affidavit is similar, and she states, "I accepted Ms. Marcus's recommendation to discharge Ms. Puleo for her clear and unmitigated policy and statute breach." Preisler and Marcus both also state that Puleo admitted to them that she knew her actions violated Texana's policies. Like Marcus, Preisler states, "Ms.

Puleo's discharge was solely and only the result of her admitted violations of HIPAA and related Center policies. ... we would not allow any employee who has engaged in such clearly illegal conduct to remain employed." Presiler adds that the only other Texana employee who has been accused of disclosing confidential information was also a female, and that she disclosed the information after she had already been terminated by Texana. Dkt. 48-2. Puleo was terminated on November 24, 2014, via a letter that was signed by Preisler and stated the termination was because Puleo intentionally violated an "essential privacy policy" when she "improperly accessed a Texana consumer/patient's private and statutorily confidential medical records and [then] gave those records to one or more third parties, for your own purpose(s)." Dkt. 48-3.

In response, Puleo points to summary judgment evidence that she says shows another male employee of Texana with the same job title and responsibilities violated Texana's confidentiality policy by transporting two patient/clients in a single car at the same time, and that this same male employee had been accused of sexual harassment of patient/clients but had never been disciplined. Even if the Court agreed that the evidence to which she points raises a genuine dispute of material fact as to the truth of these allegations, this evidence is not sufficient to establish a prima facie case that Puleo's termination was due to gender discrimination under *Turner* and similar cases. *See, e.g., Turner v. Kansas City S. Ry.* Co., 675 F.3d 887, 897 (5th Cir.2012)(discussing the need for "essentially comparable violation histories" in this context).

## C. Retaliation

Next, Texana contends that it is entitled to summary judgment on Puleo's claims

that she was improperly retaliated against after she filed her internal complaints and her EEOC charges.

 To establish a prima facie case of retaliation under Title VII, a plaintiff must show that "(1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir.2013). "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision." *Id.* Then, " '[a]fter the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation,' which the employee accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive.' " *Id.* (citing *LeMaire v. Louisiana*, 480 F.3d 383, 388–89 (5th Cir.2007) (internal citation omitted); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, —— U.S. ——, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013). Further, "[i]n order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Id.* (citing *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir.1996) (internal quotation marks omitted)); *see also Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir.2015) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened [motivating factor] causation test[.]").

As above, Texana contends that Puleo cannot demonstrate any materially adverse employment action that was taken against her, other than her ultimate termination or its decision not to hire her in the new position. Texana also contends that it is entitled to summary judgment on the issue of whether it improperly retaliated against Puleo by failing to transfer her and then ultimately firing her, contending that Puleo cannot establish that Texana would not have taken the challenged actions without her allegedly protected conduct. Further, Texana contends that it has articulated and demonstrated a legitimate, non-discriminatory reason for its challenged actions.

The Court agrees that, other her ultimate termination and Texana's failure to hire her at the new position, Puleo has not alleged any "adverse employment action."

 With respect to her termination, the Court finds that there is no evidence to support Puleo's prima facie case that her termination was causally connected to any protected activity. Assuming that all of Puleo's internal complaints, as well as both of her EEOC Charges, are "protected activity," the Court next looks to see whether there is any evidence to show that the protected activity was related to her termination. A plaintiff alleging retaliation may satisfy the causal connection element by showing "[c]lose timing between an employee's protected activity and an adverse action against him." *Feist*, 730 F.3d at 454. "Such temporal proximity must generally be 'very close.' " *Id.* (noting that " 'a time lapse of up to four months' may be sufficiently close, but a five month lapse is not close enough without other evidence of retaliation.") (internal citations omitted). In addition, "such evidence may include an employment record that does not support dismissal, or an employer's departure from typical policies and procedures." *Id.* (citing *Schroeder v. Greater New Orleans Fed. Credit Union*, 664 F.3d 1016, 1024 (5th Cir.2011).

Here, Puleo's internal complaints were filed in February 2013, and her first

EEOC Charge was filed on May 10, 2013. Puleo was not terminated, however, until November 2014. Further, the Court notes that, despite filing an astonishing number of pages as exhibits to her summary judgment briefing, Puleo has pointed to no summary judgment evidence that would support a finding of a causal link between Puleo's protected activity and her termination.

Even if such evidence had been provided and properly pointed out to the Court, Texana has offered a non-retaliatory justification for the dismissal, i.e., that Puleo was terminated after Texana discovered she violated internal policies by obtaining and using confidential, HIPAA-protected, client information for her own purposes. In response, Puleo has not offered any evidence to show that this reason is merely pretextual. Accordingly, the Court finds that summary judgment should be granted for Texana on Puleo's retaliation claim with respect to her termination.

The Court reaches the same result on Puleo's claim that Texana failed to hire her in the new position in April 2013. Even if Puleo has pled a temporal connection, in that just a few months separate her allegedly protected activity of filing internal complaints and Texana's decision not to hire her in the new position, she has not brought forth any other evidence showing a connection between the two events. In fact, the deposition and affidavits of Nancy Jones show that the decision not to hire Puleo for the new position was due to Puleo's poor performance during an in-person interview. Nancy Jones stated that she seriously considered hiring Puleo for the new position, but ultimately decided that Puleo "was not the best candidate," due to concerns Jones had during the interview about Puleo's "proclivity toward excessive self-disclosure," and Puleo's failure to demonstrate that she "could present herself in a cool, calm, and collected demeanor and adjust to the circumstances, which is essential in a crisis intervention role." After describing in detail the interview and her observations regarding Puleo's performance, Jones stated that Puleo "clearly did not demonstrate the[ ] characteristics [necessary for the job.]" Dkt. 21-4. Puleo has presented no evidence to show that her internal complaints played any part in Jones's decision not to hire her. Accordingly, the Court grants summary judgment in Texana's favor on this claim as well.

**D. Age Discrimination**

Finally, the Court turns to Puleo's claims that she was subjected to age discrimination when Texana failed to hire her for the new position. Again, Texana contends that there is no evidence to support Puleo's claims of age discrimination. The Court agrees.

The ADEA prohibits age discrimination in employment. See 29 U.S.C. § 621(b). Under the Act, it is unlawful for employers "to fail or refuse to hire or to discharge any individual or otherwise discriminate against an individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "The same evidentiary procedure for allocating burdens of production and proof applies to discrimination claims under both [Title VII and the ADEA." Bauer v. Albemarle Corp., 169 F.3d 962, 966 (5th Cir.1999). Accordingly, to establish a prima facie case of intentional discrimination based on age, Puleo must show that (1) she belongs to a protected class, (2) she was qualified for her job; (3) the defendant made an adverse employment decision based on her age; and (4) she was replaced by or treated less favorably than someone outside her protected class. Russell v. McKinney Hospi-

*tal Venture*, 235 F.3d 219, 223–24 (5th Cir.2000).

■ If Puleo makes a prima facie showing of age discrimination, the burden shifts to Texana to articulate a legitimate, non-discriminatory reason for not hiring her in the new position. If Texana articulates a legitimate, nondiscriminatory reason for not hiring Puleo, the presumption of discrimination disappears. *Id.* at 222. Puleo retains the ultimate burden of proving intentional discrimination. *Id.* Unlike Title VII, the ADEA does not authorize a mixed-motives age discrimination claim. Instead, to raise a fact issue, Puleo must present evidence capable of proving that age was the "but for" cause of the adverse employment action. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 2351, 174 L.Ed.2d 119 (2009).

■ Puleo contends that she has brought forth summary judgment evidence showing that she was indeed qualified for the new position. As discussed above, Nancy Jones, the Texana employee who interviewed Puleo for the position, admitted that the new position Puleo sought involved "the same kind of thing" that Puleo had already been doing for five years, and she agreed that she thought Puleo was "qualified" for the new position. Dkt. 23-3, pg. 20, ln. 17-20; pg. 22, ln. 24 – pg. 23, ln. 1. However, Texana contends that Puleo's age discrimination claim is baseless because Nancy Jones is actually older than Puleo, and it has presented summary judgment evidence stating that age was not a factor in the decision not to hire Puleo for the new position.

To contradict Jones's testimony and affidavit, Puleo's responds that she "has good reason to believe and does believe that she would not have been denied the promotion … but for her age." Puleo also contends that there is a "glaring conflict" between Jones's notes from that interview and her testimony. Dkt. 23, pg. 32. The Court has reviewed these notes and it does not find any such conflict. In fact, to the extent they are legible, the handwritten notes show that, during the interview of Puleo, Jones felt there were "too many details," wondered about "self-discloses?", and Jones also noted, "I felt trapped." Dkt. 23-4.

Accordingly, the Court finds that summary judgment should be granted for Texana on this claim as well.

### CONCLUSION

After considering the motions, the briefing, and the summary judgment evidence in this case, the Court finds that there is no genuine dispute of material fact on any of Puleo's claims in this lawsuit, and that summary judgment should therefore be **GRANTED** in favor of Texana.

A final judgment will be entered separately.