NANCY F. ATLAS, SENIOR UNITED STATES DISTRICT JUDGE
This employment dispute was referred to United States Magistrate Judge Dena Palermo pursuant to 28 U.S.C. § 636(b)(1)(B) by Order [Doc. # 9] entered November 13, 2017. On November 13, 2018, Magistrate Judge Palermo issued a Report and Recommendation [Doc. # 39], recommending that this Court grant Defendant's Motion for Summary Judgment [Doc. # 37]. The deadline for objections to the Report and Recommendation has expired without any objections being filed. The Court finds that the Magistrate Judge's Report and Recommendation is well founded, and that the Magistrate Judge's recommended disposition should be adopted.[1] It is therefore
ORDERED that the Report and Recommendation [Doc. # 39] is ADOPTED as this Court's Memorandum and Order. It is further
ORDERED that Defendant's Motion for Summary Judgment [Doc. # 37] is GRANTED , and this case is DISMISSED WITH PREJUDICE .
A final judgment will be entered separately.
REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
November 13, 2018
Dena Hanovice Palermo, United States Magistrate Judge
Before the Court is Defendant Texas Military Department's motion for summary judgment.[1] ECF No. 37. Having considered the motion and the record, which contain both factual evidence and applicable legal authorities, the Court recommends that Defendant's motion for summary judgment should be granted and Plaintiff Sandra Flowers' claims should be dismissed with prejudice.[2]
*660 I.
FACTUAL OVERVIEW
A. Plaintiff's Employment With The Texas Military Department.
The following are the pertinent facts. This is an employment dispute case. The Texas Military Department ("TMD") is the coordinating state agency that facilitates the Texas governor's access to the Texas National Guard and Texas State Guard to respond to disasters, emergencies, or as otherwise needed. Ex. 2 at 13, ECF No. 37-1. TMD operates the Texas Challenge Academy ("TCA") in two locations: TCA-East Campus (Eagle Lake) ("TCA-East") and TCA-West Campus (Sheffield) ("TCA-West"). Id. TCA runs a residential youth education program to provide training, education, life skills, and employment potential to at-risk students, referred to as "Cadets." Id. at 1-2; Flowers Dep. 49:10-24, ECF No. 37-2.
On May 18, 2015, Sandra Flowers ("Plaintiff") applied for a position as a Resident Specialist IV, or Team Leader, with Defendant. Ex. 3 at 16, ECF No. 37-1; Flowers Dep. 10:2-9, ECF No. 37-2. Team Leaders perform care and living skills training work for Cadets and are responsible for the direct supervision of Cadets. Ex. 5 at 1, ECF No. 37-3. The job vacancy notice for this position listed the essential job functions, including but not limited to, "transport[ing] Cadets between locations (i.e. formations, physical training areas and work sites) and for medical treatment, as needed." Ex. 5 at 1, ECF No. 37-3. The vacancy notice also stated that a "[v]alid driver's license is required." Ex. 5 at 2, ECF No. 37-3. Plaintiff represented on her initial and amended employment applications that she had a valid Class C Texas driver's license. Ex. 3 at 16, ECF No. 37-1; Ex. 7 at 6, 9, ECF No. 37-3; Ex. 8 at 10, 14, ECF No. 37-3; Flowers Dep. 16:2-6, ECF No. 37-2.
Plaintiff was hired as a Resident Specialist IV (Team Leader) effective June 1, 2015 at TCA-East. Ex. 6 at 5, ECF No. 37-3; Flowers Dep. 16:7-9, ECF No. 37-2. Plaintiff worked in this position from June 1, 2015 through April 29, 2016. Ex. 22 at 41, ECF No. 37-3. Lauren Schulman, the Program Director of TCA-East, recommended hiring and later terminating Plaintiff. Schulman Decl. ¶¶ 3-4, ECF No. 37-3. Plaintiff testified in her deposition that in her chain of command, the first shift supervisor was Marquise Wilson; next was Gonzalo Rocha; and finally, Lauren Schulman. Flowers Dep. 104:6-105:5, ECF No. 37-2.
B. Plaintiff's Non-Compliance With Driver's License Job Requirement.
Plaintiff's job description reiterated that one of her duties was "transport[ing] Cadets" and that a valid driver's license was required. Ex. 9 at 15, 16, ECF No. 37-3; Flowers Dep. 19:2-8, ECF No. 37-2; Ex. 23 at 1, 7, ECF No. 37-4. Plaintiff was aware of her job duties and signed the job description on October 20, 2015. Ex. 9 at 18, ECF No. 37-3; Flowers Dep. 16:11-19:1, ECF No. 37-2. Plaintiff conceded that she was an at-will employee and if she violated any TMD policy, she could be disciplined or terminated. Ex. 23 at 4, ECF No. 37-4.
Plaintiff's most recent driver's license expired on February 1, 2015, before she applied for the job on May 18, 2015 and before she was hired on June 1, 2015. Ex. 10 at 19, ECF No. 37-3; Flowers Dep. 19:9-20:2, ECF No. 37-2. Her driver's license record with the Texas Department *661 of Public Safety ("DPS") indicated that her driver eligibility was "not eligible," and since February 2, 2015, she was denied renewal of her driver's license due to a failure to appear.[3] Ex. 10 at 19, ECF No. 37-3. Plaintiff testified she became aware there was a hold on her license three months before she applied for the position with TDM, in February 2015, when she went to DPS to attempt to renew her license. Flowers Dep. 22:2-23:20, 25:3-6, ECF No. 37-2.
In January 2016, Ms. Schulman announced at an internal meeting that all TCA-East staff whose positions required a valid Texas driver's license were to provide a copy of their license to the Training Coordinator, Lawrence ("Larry") Olson by January 14, 2016.[4] Schulman Decl. ¶ 5, ECF No. 37-3. At the end of January, Mr. Olson reported that he confirmed the existence of or received a copy of each employee's driver's license, except Plaintiff's. Ex. 14 at 28, ECF No. 37-3.
C. Disciplinary Action Against Plaintiff.
When Mr. Olson reported that Plaintiff did not have a driver's license, Defendant did not immediately terminate her, but instead gave her more than 60 days to resolve the issue. Flowers Dep. 90:13-21, ECF No. 37-2; Ex. 23 at 4, 6, ECF No. 37-4. On February 12, 2016, Plaintiff's supervisor, Mr. Rocha, provided her with a counseling form, requiring her to provide proof of having a valid driver's license by March 14, 2016. Ex. 17 at 32, ECF No. 37-3; Ex. 23 at 7, ECF No. 37-4. Plaintiff circled on the form that she agreed with the counseling provided and signed the form.[5] Ex. 17 at 33, ECF No. 37-3; Ex. 23 at 7, ECF No. 37-4.
On March 3, 2016, Plaintiff obtained an order from a Justice of the Peace in Colorado County, Texas, granting her a restricted occupational driver's license.[6] Ex. 18 at 34-36, ECF No. 37-3; Flowers Dep. 25:20-26:9, ECF No. 37-2. The order stated that the DPS would mail the occupational driver's license within 31 days of the date of the order and after receiving Plaintiff's payment of a $10.00 fee. Ex. 18 at 34, ECF No. 37-3; Flowers Dep. 80:17-81:7, ECF No. 37-2. The order itself was valid as the occupational driver's license for 45 days-until April 16, 2016-to allow time for the driver's license to be mailed. Flowers Dep. 76:17-24, 78:22-79:5, 81:8-16, ECF No. 37-2. The only documentation Plaintiff presented to Defendant was the court order *662 granting her occupational driver's license. Id. 77:21-78:1; Ex. 20 at 38, ECF No. 37-3; Ex. 23 at 1-2, ECF no. 37-4.
Thus, the undisputed evidence establishes that Plaintiff was driving without a valid driver's license from February 2015, when her driver's license expired, through March 2016, when she received the court order for an occupational restricted driver's license, temporarily allowing her to drive to and from work. The restricted license, however, would not allow Plaintiff to drive during work hours, except for a medical emergency.
On March 23, 2016, Mr. Rocha gave Plaintiff a letter of reprimand for leaving her shift five hours early, reminding her of her obligation to maintain a valid driver's license, and warning her that "[t]he failure to do so may result in disciplinary action up to and including termination of employment." Ex. 19 at 37, ECF No. 37-3. Plaintiff signed the letter. Id.
D. Plaintiff's Termination.
By April 16, 2019, Plaintiff still had not obtained a valid driver's license from the DPS and thus did not provide it to Defendant. Flowers Dep. 78:16-21, ECF No. 37-2. Plaintiff conceded that Defendant worked with her for months to obtain a valid driver's license, but she was not able to provide one. Ex. 23 at 8, ECF No. 37-4. Plaintiff also did not update Mr. Rocha on her efforts to obtain her driver's license. Ex. 20 at 38, ECF No. 37-3. On April 19, 2016, Mr. Rocha submitted a request to terminate Plaintiff to the human resources department, due to noncompliance with the driver's license requirement and attendance issues.[7] Id. at 38-39. Ms. Schulman reviewed and signed Mr. Rocha's termination request. Id. Amanda Fletcher from the human resources department and the TMD's Executive Director approved the termination request on April 20, 2016 and April 29, 2016, respectively. Ex. 21 at 40, ECF No. 37-3. On April 29, 2016, the then director of human resources, Shelia Taylor, provided Plaintiff with her termination letter, effective May 2, 2016. Ex. 22 at 41, ECF No. 37-3. The termination letter stated Plaintiff was terminated "for violation of a condition of [her] employment to maintain a valid Driver License." Id.
E. Plaintiff's EEOC Charge.
On August 23, 2016, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") discrimination charge to the Texas Workforce Commission Civil Rights Division, alleging age and race discrimination and retaliation for reporting a hostile work environment. Ex. 27 at 22, ECF No. 37-4; Flowers Dep. 107:11-14, 108:2-17, ECF No. 37-2. On May 25, 2017, the EEOC dismissed the charge because it was "unable to conclude that the information obtained establishe[d] violations of the statutes." Ex. 29 at 24, ECF No. 37-4.
II.
LEGAL STANDARD
Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to its case and on which it will bear the burden at trial. Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ; Curtis v. Anthony, 710 F.3d 587, 594 (5th Cir. 2013) ; Little v. Liquid Air Corp. , 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Summary judgment should be granted "if *663 the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).
"Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the nonmovant will be unable to establish a genuine dispute of material fact." Stewart v. U.S. Bank Nat. Ass'n , 107 F. Supp. 3d 705, 707 (S.D. Tex. 2015). "The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. Id. "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (internal quotation marks and citation omitted).
"This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.' " Boudreaux v. Swift Transp. Co. , 402 F.3d 536, 540 (5th Cir. 2005) (quoting Little , 37 F.3d at 1075 ). " '[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial,' and summary judgment as a matter of law must be granted." Brown v. U.S. Postal Inspection Serv. , 206 F. Supp. 3d 1234, 1242 (S.D. Tex. 2016) (quoting Celotex , 477 U.S. at 322-23, 106 S.Ct. 2548 ).
The non-movant must identify specific evidence in the record and articulate how that evidence supports its claim. Baranowski v. Hart , 486 F.3d 112, 119 (5th Cir. 2007). However, the court must draw all reasonable inferences in the light most favorable to the non-moving party. Connors v. Graves , 538 F.3d 373, 376 (5th Cir. 2008) ; see also Nola Spice Designs, LLC v. Haydel Enters., Inc. , 783 F.3d 527, 536 (5th Cir. 2015).
III.
LEGAL ANALYSIS
Defendant moved for summary judgment on Plaintiff's remaining claims under Title VII of the Civil Rights Act of 1964 ("Title VII"): (1) race discrimination and (2) retaliation.[8] ECF No. 37 at 1. Defendant also moved for summary judgment based on Plaintiff's deemed admissions. ECF No. 37 at 12-15.
A. Title VII Race Discrimination Claim.
1. The modified McDonnell Douglas framework applies.
Title VII makes it unlawful for any employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e)(2). The Fifth Circuit applies the modified McDonnell Douglas burden-shifting framework to Title VII claims of race discrimination where there is no direct evidence. Smith v. City of St. Martinville , 575 F. App'x 435, 438 (5th Cir. 2014) (citations omitted), cert. denied , --- U.S. ----, 135 S. Ct. 2378, 192 L.Ed.2d 168 (2015).
Under this approach, Plaintiff must first establish a prima facie case of racial discrimination by showing that she
(1) is a member of a protected group, (2) was qualified for the position at *664 issue, (3) was discharged or suffered some adverse employment action by the employer, and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group.
Thompson v. Harris Cty. Hosp. Dist. , 575 F. App'x 371, 371 (5th Cir. 2014) (quoting McCoy v. City of Shreveport , 492 F.3d 551, 556 (5th Cir. 2007) ). If Plaintiff meets her prima facie burden, "the burden shifts to the defendant to articulate a 'legitimate nondiscriminatory reason' for the adverse employment decision." Richard v. Clear Lake Reg'l Med. Ctr. , No. H-14-358, 2015 WL 3965735, at *5 (S.D. Tex. June 30, 2015) (citing Paske v. Fitzgerald , 785 F.3d 977, 985 (5th Cir. 2015) ).
If Defendant meets this burden of production, the burden shifts back to Plaintiff to offer sufficient evidence to create a genuine issue of material fact "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." Id. (quoting Rachid v. Jack In The Box, Inc. , 376 F.3d 305, 312 (5th Cir. 2004) ).
2. Plaintiff failed to establish a prima facie case of discrimination.
Defendant contended that Plaintiff cannot meet the fourth element of the prima facie case that Defendant replaced Plaintiff with someone outside of her protected class or treated her less favorably than others. ECF No. 37 at 6. The Court agrees.
a. Defendant hired someone from Plaintiff's protected group to replace her.
First, there is no evidence that Plaintiff was replaced by someone outside her protected group. To the contrary, Alicia Ray, another African-American female, replaced Plaintiff. Ex. 33 at 1, ECF No. 37-5. Since Plaintiff's termination, Ms. Schulman hired numerous other African-Americans for Plaintiff's same position: Tris Saucier (hired July 5, 2016), De'Meese Gore (hired November 1, 2016), Ebony Glenn (hired March 13, 2017), Naylia Nunn (hired October 16, 2017), Albert Miles (hired January 8, 2018), Betty Hatton (hired March 1, 2018), and Jonathan Woods (hired April 1, 2018). Ex. 34-40, ECF No. 37-5.
b. Defendant treated others similarly.
In addition, there is no evidence that Plaintiff was treated less favorably than other similarly situated employees outside her protected group. To show the other employees were similarly situated, Plaintiff must show they had similar job duties, reported to the same supervisors, and their situations were "nearly identical." Andres v. Coll. of the Mainland , No. G-14-165, 2016 WL 1572588, at *2 (S.D. Tex. Apr. 19, 2016) (to show employees were similarly situated, the situations of the plaintiff and comparable employees must be "nearly identical") (quoting Perez v. Tex. Dep't of Crim. J. , 395 F.3d 206, 213 (5th Cir. 2004) ); Arismendiz v. Univ. of Tex. at El Paso , 536 F. Supp. 2d 710, 717-18 (W.D. Tex. 2008) (plaintiff failed to show disparate treatment where other individuals had different jobs) (citing Wyvill v. United Cos. Life Ins. Co. , 212 F.3d 296, 305 (5th Cir. 2000) ); see also Lister v. Nat'l Oilwell Varco , No. H-11-108, 2013 WL 5515196, at *22 (S.D. Tex. Sept. 30, 2013) ("[T]o be 'similarly situated,' employees must have 'held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.' ") (quoting *665 Lee v. Kansas City S. Ry. Co. , 574 F.3d 253, 259-60 (5th Cir. 2009) ).
i. The sole comparator was also counselled for not having a drivers' license.
At her deposition, Plaintiff testified that other employees who were required to but did not have a driver's license were treated differently. Conceding that Defendant counselled and took action against them, she nonetheless argued that, instead of being terminated, they were "allowed to resign" and therefore were eligible for rehire within a state agency. Flowers Dep. 108:22-110:18, 113:5-9, ECF No. 37-2; Ex. 23 at 4-5, ECF No. 37-4.[9] Plaintiff's argument is without merit.
Only two of the employees Plaintiff identified, Rachel Mayhew and Regina Willis, held the same position as Plaintiff. Flowers Dep. 112:15-17, 112:22-113:16, ECF No. 37-2; Ex. 14, ECF No. 37-3. Ms. Mayhew is white, and Ms. Willis is African-American. Id. 111:17-24, 112:1-2. Thus, Ms. Mayhew is the only proper comparator.[10]
On May 31, 2016, Mr. Rocha-the same supervisor who reprimanded and terminated Plaintiff-gave Ms. Mayhew a letter of reprimand for not having a driver's license and required her to obtain one within one month, by June 30, 2016.[11] Ex. 26 at 20, ECF No. 37-4. The policy requiring a driver's license was applied equally to Ms. Mayhew.[12] In fact, Plaintiff had more time to comply, over 60 days.
ii. Plaintiff had ample time but failed to comply before she was terminated.
Plaintiff admitted that she was advised multiple times that having a driver's license was a job requirement. Flowers Dep. 19:2-8, ECF No. 37-2; see also Ex. 5 at 1-2, ECF No. 37-3; Ex. 9 at 15-16, ECF No. 37-3; Ex. 17 at 32, ECF No. 37-3; Ex.
*666 19 at 37, ECF No. 37-3. Plaintiff knew her license expired and would not be renewed before she applied for the position. Flowers Dep. 22:2-23:20, 25:3-6, ECF No. 37-2. When she applied, she knew the position required her to have a valid driver's license to transport Cadets, yet she represented on her application that she had a valid license.[13] Ex. 3 at 16, ECF No. 37-1; Ex. 7 at 6, 9, ECF No. 37-3; Ex. 8 at 10, 14, ECF No. 37-3; Flowers Dep. 16:2-6, ECF No. 37-2. In addition, once she was hired, Plaintiff signed her job description, acknowledging she was aware of her job requirements, including the requirement to have a valid driver's license to transport Cadets. Ex. 9 at 15, 16, 18, ECF No. 37-3; Flowers Dep. 19:2-8, 16:11-19:1, ECF No. 37-2. This alone could have been grounds for termination. Nevertheless, TMD did not immediately terminate Plaintiff, but instead gave her ample opportunity-months-to resolve the issue. After being counseled to obtain a driver's license in February 2016, her subsequent letter of reprimand specifically stated that failure to maintain a valid driver's license "may result in disciplinary action up to and including termination of employment." Ex. 19 at 37, ECF No. 37-3.
Despite this notice, her efforts to resolve the matter were inadequate and indeed she never obtained a valid driver's license. The only step she took was to obtain an occupational driver's license. This restricted type license, however, did not permit her to drive Cadets as required for her position[14] because she could only drive to and from work at certain hours, or for medical emergencies.[15] This step would not satisfy her job requirement to have a valid Class C license. Plaintiff never even obtained the occupational driver's license because she failed to provide the state with proof of valid liability insurance. Flowers Dep. 28:6-25, 76:21-77:8, ECF No. 37-2.[16] By the date of her deposition in April 2018, two years later, she still had not obtained a valid driver's license. Id. 20:7-16. Because Plaintiff never had a valid Class C license during her tenure, she violated TMD's job requirement. In addition, she violated the policy every time she transported Cadets. This constitutes a valid basis for termination.
iii. The conduct of others, not Defendant, accounts for the difference in treatment.
The fact that Ms. Mayhew resigned before she could be terminated accounts for the difference in treatment between her and Plaintiff. "[I]f the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in the treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis." Fowler v. Timber Rock R.R., L.L.C. , 617 F. App'x 306, 307 (5th Cir. 2015) (quoting Lee , 574 F.3d at 260 ) (emphasis in original) (affirming grant of summary judgment because employees were not similarly situated where Plaintiff resigned to avoid the *667 same penalty his comparator received for the same work violation). Moreover, Plaintiff acknowledged that if she had wanted to quit, she could have and did not require approval from Defendant. Flowers Dep. 101:13-25, 102:22-103:3, ECF No. 37-2.
The evidence unequivocally shows that, when Defendant discovered other employees failed to meet the driver's license requirement, it acted to ensure compliance. See Johnson v. JP Morgan Chase Bank , 469 F. App'x 345, 348 (5th Cir. 2012) (affirming grant of summary judgment on discrimination claim where employer treated plaintiff and similarly situated employee the same); accord Washington v. Louisiana , 628 F. App'x 914, 918 (5th Cir. 2015) (same).[17] There is no evidence that any employee, let alone a similarly situated employee, was treated more favorably than Plaintiff with regard to this policy. Since the evidence is insufficient to establish a prima facie case for race discrimination, the Court need not proceed through the rest of the McDonnell Douglas framework. Defendant is entitled to summary judgment on Plaintiff's race discrimination claim.[18]
B. Title VII Retaliation Claim.
To establish a prima facie case of retaliation, Plaintiff must show that (1) she participated in activity protected by Title VII, (2) she was discharged or suffered some adverse employment action, and (3) a causal connection exists between the protected activity and adverse employment action. Rodriguez v. Brownsville Indep. Sch. Dist. , 739 Fed.Appx. 227, 231 (5th Cir. 2013) (citing McCoy , 492 F.3d at 557 (5th Cir. 2007) ). The McDonnell Douglas framework applies to Plaintiff's retaliation claim. Id. "[I]f the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." Id. "An employee establishes pretext by showing that the adverse action would not have occurred but for the employer's retaliatory reason for the action."[19] Id. (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar , 570 U.S. 338, 362, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013) ).
Defendant contended Plaintiff cannot meet the first and third elements of her *668 prima facie case. While Plaintiff did not file a response to Defendant's motion for summary judgment, construing the record in the light most favorable to Plaintiff, the Court notes Plaintiff engaged in conduct that could constitute protected activity. However, Plaintiff cannot meet the causation element.
1. Protected Activity.
"Under Title VII, an employee has engaged in protected activity if he or she has '(1) opposed any practice made an unlawful employment practice by this subchapter,' or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.' " Donald v. Plus4 Credit Union , No. H-16-123, 2017 WL 3235659, at *12 (S.D. Tex. July 31, 2017) (quoting Byers v. Dallas Morning News, Inc. , 209 F.3d 419, 427-28 (5th Cir. 2000) ).
a. Plaintiff's EEOC charge.
Plaintiff filed an EEOC charge on May 23, 2016. Ex. 27 at 22, ECF No. 37-4; Flowers Dep. 107:11-14, 108:2-17, ECF No. 37-2. Here, Plaintiff "filed her EEOC charge after she was terminated, therefore she must establish her prima facie case under the opposition test." Donald , 2017 WL 3235659, at *12.
b. Plaintiff's internal complaints.
"An employee that files an internal complaint of discrimination engages in a protected activity." Rodriquez v. Wal-Mart Stores, Inc. , 540 F. App'x 322, 328 (5th Cir. 2013) (quoting Fierros v. Tex. Dep't of Health , 274 F.3d 187, 194 (5th Cir. 2001) ). While Defendant disputed whether Plaintiff engaged in any protected activity, ECF No. 37 at 10-11, Plaintiff alleged that she made the following internal complaints to Keith McCall, TMD's Human Resources Specialist, prior to her termination:[20]
1. In or around September 2015, Plaintiff contacted Mr. McCall because her supervisor at the time, Marquise Wilson, told Plaintiff she could not wear her hair in its natural state as an Afro because it violated TMD's dress code/grooming policies. Ex. 4 at 169, ECF No. 37-2; Flowers Dep. 38:1-14, 56:24-57:7, ECF No. 37-2. Plaintiff felt she was discriminated against because she is black; Afros are natural and part of her heritage. Ex. 4 at 169, ECF No. 37-2; Flowers Dep. 39:17-20, ECF No. 37-2. Plaintiff alleged many employees violated the grooming policy, but she was the only one approached for violating it. Flowers Dep. 38:23-39:3, 41:18-24, ECF No. 37-2.
2. In or around October 2015, Plaintiff complained to another supervisor, Danny Bowman, that a white Team Leader, Alyssa Soloman, made a comment to Cadets describing Plaintiff as behaving "ghetto." Id. 43:8-23, 44:19-45:9, 47:8-23; Ex. 4 at 169, ECF No. 37-2.
3. In or around November 2015, Ms. Schulman questioned Plaintiff about whether she had contacted a Cadet's parent via social media, and subsequently instituted a new policy prohibiting all staff from communicating with Cadets' parents via social media. Flowers Dep. 58:12-59:10, 62:1-7, 63:13-15, 65:13-17, ECF No. 37-2; Ex. 4 at 169-170, ECF No. 37-2.
4. In or around November 2015, Plaintiff's supervisor at the time, Marquise Wilson, suggested extending Plaintiff's probationary period due to a negative performance review, though he ultimately did not do so. Flowers Dep. 51:21-23, 52:14-53:12, *669 53:17-22, 54:3-12, 55:16-21, 56:6-22, 68:7-19, ECF No. 37-2; Ex. 4 at 169-170, ECF No. 37-2.
5. In January 2016, Plaintiff complained to Mr. McCall that Rachel Mayhew, a white Team Leader, was given preferential treatment in shift scheduling even though Plaintiff had seniority. Ex. 4 at 170-71, ECF No. 37-2; Flowers Dep. 51:14-20, 69:22-70:23, ECF No. 37-2.
Construed in the light most favorable to Plaintiff, her complaints regarding her Afro and her co-worker's "ghetto" comment could constitute protected activity.[21] See E.E.O.C. v. Catastrophe Mgmt. Sols. , 852 F.3d 1018, 1030 (11th Cir. 2016) (recognizing that discrimination on the basis of black hair texture-an immutable characteristic-such as a natural Afro is prohibited by Title VII) (citing Jenkins v. Blue Cross Mut. Hosp. Ins., Inc. , 538 F.2d 164, 168 (7th Cir. 1976), reh'g denied , 876 F.3d 1273 (11th Cir. 2017) ; Garza v. Ranier L.L.C. , No. 12-CV-475, 2013 WL 3967786, at *4 (W.D. Tex. July 31, 2013) (denying summary judgment on discrimination claim where supervisor referred to "ghetto-ness" of employee's office, and recognizing that the term "ghetto" has racial overtones) (citing Turner v. Baylor Richardson Med. Ctr. , 476 F.3d 337, 348 (5th Cir. 2007) ); see also Howard v. United Parcel Service, Inc. , No. 3:09-CV-2074, 2011 WL 195682, at *7-8 (N.D. Tex. Jan. 18, 2011) (where plaintiff reported up the chain of command that his supervisor referred to him as a "Texas boy" and he considered being called a "boy" as a racial slur, this satisfied the low prima facie burden to show the plaintiff engaged in protected activity), aff'd , 447 F. App'x 626 (5th Cir. 2011). The Court assumes, without deciding, that these internal complaints constituted protected activity.
2. Causation.
Even assuming Plaintiff engaged in protected activity, the Court finds there is insufficient evidence in the record to show causation. Courts have recognized numerous ways in which plaintiffs could circumstantially show causation at the prima facie stage or at the pretext stage. See, e.g., Robinson v. Jackson State Univ. , 714 F. App'x 354, 361 (5th Cir. 2017) ("[T]emporal proximity, specific conversations with knowledgeable colleagues, changed decisionmaker behavior following complaints, pretext, and parallel outcomes for similarly-situated *670 employees-are among the prototypical circumstantial indicators of ... causation[.]") (also recognizing that shifting employer rationales, employer's departure from policies, close timing between an employee's protected activity and adverse action may also constitute evidence of pretext). There is no such evidence in the record to establish a prima facie showing of causation.
"To establish a causal link, a plaintiff must produce evidence demonstrating that the materially adverse action was taken at least in part on the knowledge of the plaintiff's [protected] activity. But 'mere knowledge' is not sufficient alone to establish a prima facie case for retaliation." Standley v. Rogers , 202 F. Supp. 3d 655, 670 (W.D. Tex. 2016) (internal citations omitted), aff'd , 680 F. App'x 326 (5th Cir. 2017). "In evaluating a Title VII retaliation claim, 'we ... look to who actually made the decision or caused the decision to be made...." Yancy v. U.S. Airways, Inc. , 469 F. App'x 339, 344 (5th Cir. 2012) (citation omitted).
Here, Mr. Rocha disciplined Plaintiff for non-compliance with the driver's license requirement. Ex. 17 at 32, ECF No. 37-3; Ex. 19 at 37, ECF No. 37-3. Mr. Rocha and Ms. Schulman made the decision to terminate Plaintiff. Ex. 20 at 38-39, ECF No. 37-3; Schulman Decl. ¶ 4, ECF No. 37-3. There is no evidence in the record about what, if anything, Mr. Rocha and Ms. Schulman knew about Plaintiff's internal complaints. There is no indication they "raised" Plaintiff's complaints with her "or appeared to have any concern about them." Yancy , 469 F. App'x at 344.[22]
Moreover, "the mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case, especially if a lengthy period of time passed between the two." Atkins v. Se. Cmty. Health Sys. , 712 F. App'x 388, 391 (5th Cir. 2017) (internal citations omitted). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." Gorman v. Verizon Wireless Tex., LLC , No. 4:11-CV-729, 2013 WL 4520187, at *5 (S.D. Tex. Aug. 24, 2013) (quoting Swanson v. Gen. Servs. Admin. , 110 F.3d 1180, 1188 (5th Cir. 1997) ), aff'd , 753 F.3d 165 (5th Cir. 2014). "The proximity between the employer's knowledge and the adverse employment action must be very close." Standley , 202 F. Supp. 3d at 670 (citing Clark Cty. Sch. Dist. v. Breeden , 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) ). The issues regarding Plaintiff's Afro and the "ghetto" comment arose around September and October 2015, respectively. Ex. 4 *671 at 169, ECF No. 37-2. Plaintiff was terminated on April 29, 2016, effective May 2, 2016-six months later. Ex. 22 at 41, ECF No. 37-3. This is not sufficiently close, without more, to support an inference that her termination was because of her complaints. See, e.g., Ganheart v. Brown , 740 Fed.Appx. 386, 391-92 (5th Cir. 2018) (holding five-month period insufficient); accord Puleo v. Texana MHMR Center , 187 F. Supp. 3d 769, 784 (S.D. Tex. 2016) ("[A] five month lapse is not close enough without other evidence of retaliation.") (citation omitted).
Plaintiff asserted in her EEOC charge, complaint, and deposition that she was terminated in retaliation for making complaints to Mr. McCall about a hostile work environment. ECF No. 1 at 2; Ex. 27 at 22, ECF No. 37-4; Flowers Dep. 31:1-14, 99:7-14, 108:2-17, 114:1-14, ECF No. 37-2. However, the record reveals little other than Plaintiff's speculation and subjective belief that she was retaliated against. "Just as with race discrimination claims, a plaintiff's own subjective belief that the employer's proffered reason is pretext is not sufficient to establish an issue of material fact" for a retaliation claim. Standley , 202 F. Supp. 3d at 668 (quoting Shackelford v. Deloitte & Touche, LLP , 190 F.3d 398, 408 (5th Cir. 1999) ). Plaintiff's evidence is insufficient to survive summary judgment. See id. at 671 (plaintiff failed to make prima facie showing of retaliation where he cited no evidence, provided no specific factual allegations in support of his claim, and pure speculation was insufficient).
Even assuming the evidence was sufficient for a prima facie case, there is no evidence that Defendant's legitimate, nonretaliatory reason for termination was pretextual.[23] "[I]n a case in which the employer has articulated a rational justification for terminating an employee, and the facts supporting that justification are not seriously disputed, the task of proving pretext becomes quite difficult." Brewer v. Lavoi Corp. , No. 3:13-CV-4918, 2016 WL 769977, at *5 (N.D. Tex. Jan. 22, 2016) (granting summary judgment where plaintiff conceded he did not comply with supervisor's order and such conduct could result in termination) (quoting Chaney v. New Orleans Public Facility Mgmt., Inc. , 179 F.3d 164, 168 (5th Cir. 1999) ), report and recommendation adopted , 2016 WL 759570 (N.D. Tex. Feb. 26, 2016) ; accord Raggio v. Parkland Mem'l Hosp. , No. 3-95-CV-680, 1997 WL 135662, at *7 (N.D. Tex. Mar. 12, 1997) (granting summary judgment on retaliation claim because plaintiffs "have not countered with sufficient evidence of the falsity of Defendants' reason nor have they revealed it to be a facade for retaliatory discharge.").
Here, Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff cannot seriously be disputed. Plaintiff conceded that she was an at-will employee and if she violated any TMD policy, she could be disciplined or terminated. Ex. 23 at 4, ECF No. 37-4. She was aware that her job required her to have a driver's license and to drive Cadets as needed. Ex. 9 at 15, 16, 18, ECF No. 37-3; Flowers Dep. 16:11-19:8, ECF No. 37-2; Ex. 23 at 1, 7, ECF No. 37-4. Plaintiff conceded that Defendant worked with her for months to obtain a valid driver's license, but she was *672 not able to provide one. Ex. 23 at 8, ECF No. 37-4.
Plaintiff failed to respond to Defendant's motion for summary judgment and presented no evidence. Nevertheless, the Court scoured the record to resolve all factual inferences in the light most favorable to Plaintiff, and still found no evidence to show causation.[24] Plaintiff "failed to both show a prima facie case of retaliation and to provide any evidence that would permit a reasonable trier of fact to find pretext on the part of the [Defendant]." Standley , 202 F. Supp. 3d at 673. Defendant is entitled to summary judgment on Plaintiff's retaliation claim.
C. Deemed Admissions.
Defendant also moved for summary judgment on Plaintiff's claims based on deemed admissions. ECF No. 37 at 12-15. Since the Court recommends granting Defendant's motion on the merits, the Court need not reach this issue.[25]
IV.
CONCLUSION
The Court recommends that Defendant's motion for summary judgment should be GRANTED and Plaintiff's claims should be DISMISSED with prejudice .
The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C) ; Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error. Quinn v. Guerrero , 863 F.3d 353, 358 (5th Cir. 2017).

Since there are no objections, the Court has not made a de novo review of this matter. See 28 U.S.C. § 636(b)(1).

Plaintiff did not file a response. "[P]ursuant to the Local Rules of the United States District Court for the Southern District of Texas, failure to respond to a motion is taken as a representation of non-opposition." Parra v. Devon Energy Prod., Co. , No. H-10-0602, 2011 WL 1232818, at *4 (S.D. Tex. Mar. 31, 2011) (citing S.D. Tex. R. 7.3, 7.4). "However, when a plaintiff fails to respond to a defendant's summary judgment motion, the Court must nevertheless consider the merits of the motion." Id. (citing Resolution Trust Corp. v. Starkey , 41 F.3d 1018, 1022-23 (5th Cir. 1995) ).

On November 13, 2017, the district judge referred this case for all pretrial purposes pursuant to 28 U.S.C. § 636, including all potentially dispositive matters for Report and Recommendation. Order, ECF No. 9. Pursuant to 28 U.S.C. § 636(b)(1)(A), a motion for summary judgment is a dispositive motion appropriate for a Report and Recommendation.

Defendant produced as evidence two notices the DPS allegedly sent to Plaintiff: (1) one on December 3, 2014, notifying Plaintiff that her driver's license would not be renewed due to a failure to appear (Ex. 12 at 24, ECF No. 37-3); and (2) one on February 4, 2015, notifying Plaintiff that her driver's license was invalid (Ex. 13 at 26, ECF No. 37-3). However, Plaintiff testified in her deposition that she never received these notices because they were sent to an old mailing address. Flowers Dep. 20:19-22:1, ECF No. 37-2.

Plaintiff testified during her deposition that in January 2016 she was out of the office due to illness, was not present at this meeting, and was unaware that such announcement was made. Flowers Dep. 92:11-93:18, ECF No. 37-2.

While disputed, Plaintiff alleged during her deposition that this was the first time she became aware that her not having a valid driver's license was a problem vis-à-vis her employment. Flowers Dep. 90:23-91:12, 91:22-93:18, ECF No. 37-2.

Plaintiff's occupational driver's license was a restricted driver's license, allowing her to drive for limited purposes including to and from work between the hours of 6:00 a.m. to 9:00 a.m. and 9:30 p.m. to 9:45 p.m., or for medical emergencies during work hours. Ex. 18 at 34-35, ECF No. 37-3; Flowers Dep. 26:14-28:5, ECF No. 37-2.

In addition to the March 23, 2016 letter of reprimand for leaving her shift early, Mr. Rocha reported that Plaintiff took three unscheduled absences immediately before or after her scheduled days off. Ex. 20 at 38, ECF No. 37-3.

Plaintiff also brought an age discrimination claim under the Age Discrimination in Employment Act ("ADEA"). ECF No. 1. However, the Court dismissed this claim. See Report and Recommendation, ECF No. 18; Order Adopting Report and Recommendation, ECF No. 21.

However, Plaintiff contended that such action was only taken after she complained she was being treated differently. Ex. 23 at 4-5, ECF No. 37-4. The evidence shows, however, Defendant did not become aware that other employees also did not have valid driver's licenses until after Plaintiff was terminated, including Antoine Seals, Rachel Mayhew, Michell Davis, and Clarence Harris. Ex. 14, ECF No. 37-3; Ex. 25 at 12-15, ECF No. 37-4; Ex. 26 at 18, ECF No. 37-4.

Each of the others Plaintiff named were African American and therefore not proper comparators. In addition, they held different jobs. Mr. Seals and Mr. Harris were both chefs and Ms. Davis was a food service manager. Ex. 26 at 16, 19, ECF No. 37-4; Flowers Dep. 112:10-11, 112:18-21, ECF No. 37-2. Since they did not have the same job as Plaintiff and did not have the same expectation to transport Cadets, they are not similarly situated to Plaintiff. See Lister v. Nat'l Oilwell Varco , No. H-11-108, 2013 WL 5515196, at *22-23 (S.D. Tex. Sept. 30, 2013) (plaintiff and proposed comparators were not similarly situated where they had different jobs or responsibilities).

Likewise, Ms. Davis was given a counseling form, though she was given additional time to provide her driver's license because it was unlikely she would have to transport Cadets. Ex. 26 at 16-17, ECF No. 37-4. In contrast, two of the others, Mr. Seals and Mr. Harris, were asked to provide their driver's license by the next business day. Id. at 18. Plaintiff had months to comply.

Ms. Mayhew submitted a notice of resignation on June 19, 2016, effective June 30, 2016. Ex. 26 at 21, ECF No. 37-4; McCall Aff. at 26, ECF No. 37-4. Each of the other employees also chose to resign before their grace period expired. Ms. Davis submitted a notice of resignation on July 5, 2016, effective July 19, 2016. Ex. 28 at 23, ECF No. 37-4; McCall Aff. at 26, ECF No. 37-4. Mr. Seals submitted a notice of resignation on May 23, 2016, effective June 7, 2016. Ex. 26 at 19, ECF No. 37-4; McCall Aff. at 26, ECF No. 37-4. Mr. Harris resigned with an effective date of June 20, 2016. McCall Aff. at 26, ECF No. 37-4. Ms. Willis also did not have a driver's license and resigned, effective July 7, 2016. McCall Aff. at 26, ECF No. 37-4.

Accordingly, Plaintiff did not even meet the minimum qualifications required for the position when she was hired. Because she never obtained a Class C driver's licensed, she remained unqualified for the position throughout her tenure with TMD.

Ex. 5 at 1, ECF No. 37-3; Ex. 9 at 15, 16, ECF No. 37-3.

See supra , n.6.

This suggests that Plaintiff was driving without the required liability insurance. She also violated the law each time she drove without a valid driver's license throughout at least a one-year period-from February 2015, when her license expired, through March 2016, when she received the court order temporarily granting an occupational license.

The human resources department now requires new employees to provide proof of a valid driver's license upon hiring to prevent this type of problem from reoccurring. Ex. 15 at 30, ECF No. 37-3. In addition, Mr. Olson received a letter of reprimand for failing to "provide an accurate and honest accounting of staff members who had not supplied [him] with their Texas Driver's License[.]" Ex. 24 at 11, ECF No. 37-4.

Defendant also asserted the same actor inference applies. ECF No. 37 at 9. "The same actor inference creates a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue." Gilbert v. Big Brothers Big Sisters of Am., Inc. , 262 F. Supp. 3d 402, 409 (N.D. Tex. 2017) (quoting Spears v. Patterson UTI Drilling Co. , 337 F. App'x 416, 421-22 (5th Cir. 2009) ). This applies at the third stage of the McDonnell Douglas analysis. Garza v. Ranier L.L.C. , No. A-12-CV-475, 2013 WL 3967786, at *6 (W.D. Tex. July 31, 2013). Since the Court does not reach that stage in its analysis, the Court need not address this argument here.

Unlike Title VII discrimination claims, the traditional, not modified, McDonnell Douglas analysis applies to Title VII retaliation claims. Univ. of Tex. Sw. Med. Ctr. v. Nassar , 570 U.S. 338, 362-63, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013). A plaintiff cannot show causation or pretext in a retaliation claim by relying on the mixed-motive analysis. Id. Rather, protected activity must be a but for cause of the retaliatory conduct, which is a higher standard than the motivating factor analysis. Id.

Flowers Dep. 32:5-25, 36:2-24, 96:3-98:11, ECF No. 37-2; Ex. 4 at 169-71, ECF No. 37-2.

Though there is little evidence in the record as to whether Plaintiff specifically characterized her complaint regarding her Afro as racially motivated when she reported it internally, the Court assumes she did to resolve all factual inferences in her favor. The Court notes Plaintiff attached to her complaint Mr. Wilson's review of her probationary period, to which she added her own comments. ECF No. 1 at 12-13. Therein, she complained that she has been asked to change her hairstyles, but she does not therein allege this was racially motivated. Id. As to the other complaints Plaintiff raised to Mr. McCall, the record does not indicate that Plaintiff ever characterized these issues as racially motivated. "Complaints to employers that do not complain of conduct protected by Title VII do not constitute protected activities under the statute." Walker v. Univ. of Tex. Med. Branch-Galveston , No. 3:17-CV-313, 2018 WL 3850827, at *3 (S.D. Tex. July 3, 2018) (citation omitted), report and recommendation adopted , 2018 WL 3844691 (S.D. Tex. Aug. 13, 2018). Merely complaining that a work environment is "hostile" or that a plaintiff was treated unfairly does not constitute protected activity. Id. For an internal complaint to constitute protected activity, the plaintiff must have given the employer some indication that a protected characteristic such as race or sex was the basis for those complaints or that she was treated differently because of her race, sex, or other protected status. Id. (collecting Fifth Circuit cases). Absent any facts to that effect, Plaintiff's other complaints to Mr. McCall cannot be construed as protected activity and cannot support Plaintiff's claim for retaliation.

Although other supervisors, Marquise Wilson and Danny Bowman, were aware of Plaintiff's complaints, there is no evidence that either "was responsible for the employment decision, had influence over the employment decision, or was privy to the decision-making process." Ng-A-Mann v. Sears, Roebuck & Co. , 627 F. App'x 339, 343 (5th Cir. 2015) (granting summary judgment on discrimination claim); see also Yancy v. U.S. Airways, Inc. , 469 F. App'x 339, 344 (5th Cir. 2012) (plaintiff failed to make prima facie showing of causation where she failed to present evidence that persons who told her to drop EEOC charges were responsible for or had any influence on the decision to suspend her); Standley v. Rogers , 202 F. Supp. 3d 655, 670 (W.D. Tex. 2016) (plaintiff failed to make a prima facie showing of retaliation where it was "unclear what, if any, responsibility" one supervisor with knowledge had for adverse employment actions because the decision terminate him was made by other supervisors). The same applies to Ms. Solomon, who made the "ghetto" comment; she was Plaintiff's peer and had no supervisory role. Flowers Dep. 46:5-14, ECF No. 37-2.

Defendant again asserted the same actor inference applies. ECF No. 37 at 12; see Howard v. United Parcel Service, Inc. , No. 3:09-CV-2074, 2011 WL 195682, at *7-9 (N.D. Tex. Jan. 18, 2011) (applying same actor inference to retaliation claim). Here, Ms. Schulman was involved in both Plaintiff's hiring and termination. Schulman Decl. ¶¶ 3, 4, ECF No. 37-3. This weighs against a finding that Defendant's reason for termination was pretextual.

The Court also reviewed various documents Plaintiff attached to her Complaint, ECF No. 1, but these likewise fail to create a genuine issue of material fact for either of her claims. In fact, the Court has not found a single fact in the record supporting the filing of this lawsuit.

The Court notes that some of the requests for admissions reinforce facts the Court already found were beyond reasonable dispute according to other evidence in the record, including that Plaintiff did not possess a valid Class C driver's license during her employment and never provided Defendant with proof of such license. Ex. 31 at 32, ECF No. 37-4. But, while "[d]eemed admissions can serve as the basis for summary judgment, ... only proper requests for admission will be deemed admitted." Thompson v. Beasley , 309 F.R.D. 236, 240 (N.D. Miss. 2015) (internal citations and quotation marks omitted). Many of Defendant's other requests for admissions improperly involve conclusions of law or facts Plaintiff already denied in response to Defendant's first set of requests for admissions. See Allen v. Ocwen Loan Serv., LLC , No. H-15-1672, 2015 WL 12778694, at *3 n.1 (S.D. Tex. Dec. 24, 2015) ("Because '[r]equests for admissions cannot be used to compel an admission of a conclusion of law,' only admissions of 'ultimate facts' or 'applications of law to fact' are considered.") (quoting In re Carney , 258 F.3d 415, 419 (5th Cir. 2001) ); see also McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co. , 322 F.R.D. 235, 245 (N.D. Tex. 2016) ("Rule 36 should not be employed to establish facts that are obviously in dispute.") (quoting Carney , 258 F.3d at 419 ).